**MISSOURI–KANSAS–TEXAS R. CO. OF TEXAS v. HAIL.**

No. 1523–5835.

Commission of Appeals of Texas, Section A.

April 21, 1932.

▮

J. M. Chambers, of Dallas, and E. V. Hardwick, of Stamford, for plaintiff in error.

Smith & Smith, of Anson, and M. V. Brooks, of Roby, for defendant in error.

HARVEY, P. J.

This is a suit by Temple Hail against the Missouri-Kansas-Texas Railroad Company of

Texas to recover damages for personal injuries. The trial court instructed the jury to return a verdict for the railroad company, and judgment was rendered accordingly. The Court of Civil Appeals reversed that judgment, and remanded the cause. 30 S.W.(2d) 1062.

While attempting, as a passenger, to board a moving passenger train of the railroad company, at Hamlin, Tex., Hail fell and the train ran over his arm, cutting it off. Among the grounds of negligence charged against the company was the failure of the train operatives to give warning that the train was about to depart, and in causing the train to jerk violently as he attempted to board it. Hamlin is a town through which the passenger train in question was operated. The following facts appear from testimony introduced: On the occasion in question, Hail went to the railway station, a short time before train time, for the purpose of going on the train from Hamlin to Stamford, Tex. There were one or two other persons in the waiting room who intended to become passengers on the train. When the train drew up to the station, the other passengers left the waiting room and boarded the train. Hail started to leave the waiting room with them, but, as he got to the door, it occurred to him that he had not obtained a ticket. He thereupon turned back to the ticket window and purchased a ticket. He then left the waiting room for the purpose of boarding the train. As he came out, the train, which was headed east, was standing on the main track just north of the station. The front end of the baggage and express car lacked a few feet of being opposite the entrance to the waiting room. Behind the baggage and express car were two coaches. The front end of the hindmost coach was the place where passengers were expected to board the train. This place for boarding the train was, on the occasion in question, some 140 or 150 feet west of the entrance to the waiting room. The undisputed evidence shows that it was customary for the train in question to stop at Hamlin no longer than was necessary for passengers to disembark and embark, and for the loading and unloading baggage and express shipments into and from the baggage and express car; and that those operations usually required about 3 or 4 minutes of time. The evidence also shows, without dispute, that it was customary, and had been for a long period of time, for the conductor or some other train operative, to give warning that the train was ready to depart by calling out "All aboard." Hail knew of these several customs, and knew that the train usually stopped but about 3 or 4 minutes. On leaving the waiting room as stated above, Hail turned his steps westward toward the rear passenger coach for the purpose of getting aboard the train. As he walked along he passed a truck which was drawn up beside the baggage and express car, and saw the conductor and another man on the truck engaged in loading and unloading baggage, and perhaps express shipments, into and from the baggage and express car. He continued on toward the rear coach. When he reached a point about 15 or 20 feet from the rear coach he met two men, who were friends of his, and who had just assisted a relative of theirs to board the train. On meeting these men, he became engaged in conversation with them, and turned and walked southward with them to a point on the station grounds, which point was about 35 or 40 feet southeast of the front end of the rear passenger coach, where the train was to be boarded. At said point, the three stopped, and a few seconds later the two friends of Hail moved on. About this time, Hail saw the train begin to move. The interval of time that had elapsed since he left the waiting room was about three minutes. He testified that he had been constantly listening for the warning signal, "All aboard," to be called, and was relying on such warning signal to be given. He testified to facts which tend to prove that said warning call was not made by any of the train operatives, or anyone else. None of the train operatives were down in the vicinity of the rear coach. Hail knew the conductor and knew that he, or some other trainman, usually called out "All aboard" when the train was ready to depart. There is testimony to show that, if this warning call had been given on the occasion in question, Hail could and would have reached and boarded the train before it began to move. When he discovered that the train was moving out, as stated above, he walked rapidly to it, as it moved slowly along, and taking hold of the hand rails on either side of the steps leading to the front platform of the rear coach—one with his left hand and the other with his right—he stepped up on the lower step. Just as he did this, the train gave two violent jerks or lurches forward, which resulted in Hail being thrown to the ground and being injured as stated. This accident occurred about 8:00 p. m. February 18, 1929.

The testimony raises a fact issue as to negligence on the part of the railroad company, in failing to give the customary warning call "All aboard." It cannot be doubted that the facts stated show that the status of Hail was that of passenger, and that the company had become charged with the duty to exercise that high degree of care for his safety which the law imposes on a carrier of passengers. Hail did not lose his status of passenger, by failing to go immediately and get aboard the train when he purchased his ticket. Nor do we think that it can be said, as a matter of law, as the plaintiff in error contends, that Hail was negligent in failing to go aboard immediately. Admittedly he knew

that the train, according to custom, would remain standing no longer than was necessary for passengers to get 'on and off the train, and for the loading and unloading of baggage and freight into and from the baggage and express car. The length of time the train usually remained stopped was variable, depending on the length of time required to conclude the operations named. Hail also knew, however, that the warning signal "All aboard" was customarily given when those operations were concluded and the train was ready to depart. About three minutes before the accident occurred he had seen the conductor, and another .man, up towards the front end of the train, engaged in loading and unloading baggage and freight. He was listening for the warning call that would signify that this task had been completed, and that the train was ready to go. It would be going too far to hold, as a matter of law, that Hail, under these circumstances, negligently delayed getting aboard the train. That, we think, was a jury question.

For the reasons stated, we recommend that the judgment of the court of Civil Appeals, reversing the judgment of the trial court, be affirmed.

GREENWOOD and PIERSON, JJ.

Judgment of the Court of Civil Appeals is affirmed, as recommended by the Commission of Appeals.

CURETON, C. J., not sitting.